This was one of the "near beer” eases prosecuted by the Anti-Saloon League under the Rose county local option law.' After re *104 viewing the testimony of a number of other witnesses the court proceeded:
Maier, J.
Karl J. Kock, brew-master and superintendent of the Wapakoneta Brewing Company, testified that they sent one one-half barrel of temperance beverage, “gratis,” to John Nunlist, John Henn and some other person whose name he did not remember; that he was sure that said beverage contained less than four-tenths of one per cent, alcohol.
W. IT. ITerancourt, brew-master and .superintendent of the Wagner Brewing Company, another of defendant’s witnesses, testified as to the manner and process of making their temperance beverage, and was positive that their beverage contained four-tenths of one per cent, or less of alcohol, and that a man could not drink enough of it to become intoxicated.
E. K. Smith and R. J. March, chemists of Dayton, Ohio, both graduates in chemistry of Yale College, testified that they analyzed samples of temperance beverage furnished by John Nunlist, which, by the testimony of R. W. Bosley and L. C. Jackson, was taken from the keg sold to Nunlist by the Wagner Brewing Company, and out of which was taken the samples given to Eickhoff on the night of February 27th, 1909, during the search of the Nunlist premises; that the liquid in said samples contained in volume four-tenths of one per cent, of alcohol, and that they surely did not believe a person could drink enough of said beverage to become intoxicated.
After carefully reviewing all the evidence submitted for the state and for the defense, together with the arguments of the attorneys on both sides and the brief submitted by the attornéys for the state, it is the opinion of the court that this case resolves itself into two branches, namely:
First. Whether or not John Nunlist, the defendant, did unlawfully keep a place wherein intoxicating liquors were kept, sold or given away, said place not being the private residence of said John Nunlist, and said intoxicating liquors being other than the so-called temperance beverage commonly called near beer.
Second. Whether or not the temperance beverage commonly called near beer or any other beverage containing less than one- *105 half of one per cent, of alcohol shall be considered an intoxicating beverage, and the keeping, selling or giving away of said beverage is in violation of the Rose county local option law, as enacted by the General Assembly, March 5th, 1908, Yol. 99, Ohio Laws, page 35.
Taking up the first branch as it resolves itself to the court:
It was insisted by the attorneys for the state that the testimony of Forest Bennett, Cornelius Senseman and Dr. H. H. Havens, wherein they stated that they had noticed Samuel C. Hawver enter the front door of the Nunlist Hotel two or three times upon the evening of January 23d, 1909, and remain each time about twenty to thirty minutes, and coming to the bowling alley in an intoxicated condition, is prima facie evidence that said Hawver drank intoxicating liquors in said hotel. The said witnesses did not state that they saw said Hawver drink any liquids while within said hotel. Hawver (the state’s witness), in his testimony, stated that he had not drunk or received any intoxicating liquors in the Nunlist place since December 24th, 1908, and he also stated that he was not intoxicated on the night of January 23d, 1909. The evidence also disclosed that Mr. Clingan, also, was one of the party who bowled with said Hawver on the evening of January 23d, 1909, but he did not state that said Hawver was in an intoxicated condition, but did state that on another evening said Hawver visited the bowling alley and took off his overcoat and immediately put it on again and walked up the street a short distance, stopped and returned to the bowling alley, took off his overcoat ag'ain and commenced to bowl. Said Clingan stated that he thought this strange, but he did not state that Hawver was intoxicated.
The court does not think this a strange act. Many persons start out to go somewhere and suddenly change their minds. Should this be a sign of intoxication, then no doubt every man of affairs, especially the very busy man, has been intoxicated a number of times.
Ad. Wampool testified that he saw Hawver drink out of a bottle, but could not state whether the bottle contained a soft drink or intoxicating liquor.
It was also contended by the attorneys for the state that the testimony of the defendant himself showed that he had an in *106 ternal revenue license tacked up on the wall near the door; that this fact would warrant the court in deciding this case for the state. The defendant himself testified in reference to the internal revenue license being on the wall. But the evidence disclosed that the license in question was issued some time prior to December 24th, 1908. Now, if it had been shown by the evidnece that said license had been issued since December 24th, 1908, then it would indicate that said Nunlist was selling something requiring a federal license to vend, probably in violation of the Rose county local option law. But the court is of the opinion that said defendant should not be held guilty merely upon the fact that the license was allowed to remain hanging on the wall after local option had, in this county, gone into effect.
It was also contended by the attorneys for the state, that the said Nunlist was still using his bar fixtures; that this should be held as prima facie evidence that he is guilty of violating the Rose •county local option law.
This proposition is so absurd that it is hardly worth the time to make any comment on same. Use by the defendant of the old fixtures which belong to him surely would not be even prima facie evidence of the selling of intoxicating liquors in violation of the Rose county local option law.
Summing up all the evidence in the first branch of the case, the court is of the opinion that the weight of the evidence has not been sufficient to prove the defendant, John Nunlist, guilty beyond a reasonable doubt of selling intoxicating liquors other than the so-called temperance beverage containing less than one-half of one per cent, of alcohol.
The second branch of this case brings forth a specific proposition, namely, whether or not a beverage containing less than one-half of one per cent, of alcohol is an intoxicating liquor.
It was argued by the attorneys for the state that a beverage containing alcohol is an intoxicant, regardless of whether the quantity contained in it is or is not of itself intoxicating. They insisted that, should a beverage contain only one-hundredth part of one per cent., or even any trace of alcohol, the selling thereof would be a violation of the Rose- county local option law.
The subject of almost every law passed by the General Assembly, regulating or prohibiting the sale of intoxicating liquors, *107 reads as follows: ‘ An act providing against the evils resulting rom the traffic in intoxicating liquors.”
These tvords tvill be found in the following bills passed recently by the General Assembly of Ohio:
House Bill No. 305, passed March 22, 1906, Vol. 98, Ohio •Laws, page 68.
House Bill No. 24, passed'March 28, 1906, Vol. 98, Ohio Laws, page 99.
Amended Senate Bill, No. 345, passed March 5, 1908, Vol. 99 Ohio Laws, page 35.
What is an intoxicating liquor? The court is of the ©pinion that a good definition is given by the Supreme Court of Kansas, one of the oldest prohibition states in the Union. Said definition is given in Intoxicating Liquor Case§, 25th Kansas Reports, page 767, which is as follows:'
“But if the general expression is used, intoxicating liquors may be defined as meaning any liquor, intended for use as a beverage, or capable of being so used, which contains, either obtained by fermentation or by the additional process of distillation, in such a proportion that it will produce intoxication when taken in such quantities as may practically be drunk. ’ ’
American & English Encyclopedia of Law, Vol. II, page 571, gives the following definitions of “Intoxicating Liquors”:
First. Intoxicating liquors are such liquors as will intoxicate or make drunk, and which are commonly used as a beverage for such purposes, whether they be spirituous, vinous or malt, distilled ©r fermented. Any mixture of such liquors which retains the intoxicating qualities and which may be used as a beverage and becomes a substitute for the ordinary intoxicating drinks, it is thought, may be properly classed under the head of intoxicating liquors.”
Second Definition: “Any liquid constituting any part of a mixture of intoxicating liquor or liquors which retain their intoxicating qualities, and which may be used as a beverage, and thereby become the substitute for the ordinary intoxicating drink, is thought to be within all statutes denouncing or prohibiting the sale of intoxicating liquors. It has been decided that any liquor is within the meaning of the terms “strong and spirituous liquors” in an act to suppress intemperance, whether *108 such liquors be fermented or distilled of which the human stomach can contain enough to produce intoxication.”
The Cyclopedia of Law and Procedure, Yol. 23, page 57, gives the following definition of intoxicating liquors in general:
“In the absence of a statutory definition, this term is understood to include any liquor being so used which contains such a proportion of alcohol that it will produce intoxication when imbided in- such quantities as it is practically possible for a man to drink. It is, therefore, permissible to show the proportion of alcohol contained in any liquor in dispute. If this is very great, the courts may hold, without further evidence, that the liquor is ‘intoxicating’; if extremely small, they may hold that it is not' within the meaning of that term. But otherwise the question must be determined upon testimony as to whether or not the liquor in question can and does actually produce intoxication when taken as a beverage. When this term is defined by statute, the courts are bound by it and can neither enlarge nor restrict its signification; and any liquor which is named or plainly included in the statute must be held intoxicating as a matter of law, without inquiry into its actual properties, and even though, as a matter of fact, it is not capable of intoxication. ’ ’
It has been contended by the attorneys for the state in their brief that the Legislature has the right and ¡authority to define what intoxicating liquors mean. The court is of the opinion that this is true.
What is the reasonable construction of that section of the Rose county local option law which defines the term of “intoxicating liquor” as follows:
‘ ‘ The phrase ‘ intoxicating liquor, ’ as used in this act, shall be construed to mean any distilled, malt, vinous or any intoxicating liquor whatever. ’ ’
This court believes that it means any distilled intoxicating liquor, any malt intoxicating liquor, any vinous intoxicating liquor, or any other intoxicating liquor. It must be an intoxicant as defined in the American & English Encyclopedia of Law and in Cyclopedia of Law and Procedure.
The phrase “intoxicatingliquor,” as used in said section of the Rose county local option law, is most prominent, and therefore the remainder of said section should be taken as secondary to, and in conjunction with said phrase. In the opinion of the court, to *109 say ihai the liquor used need not be an intoxicant, and the selling of a non-intoxicating malt, distilled or vinous liquor would be a violation of the Bose county local option law, would make ihai laiv an absurdity.
Is a so-eallecl temperance beverage containing four-tenths of one per cent, of alcohol an intoxicating liquor ? It is the opinion of the court that the weight of evidence shows beyond a reasonable doubt that said temperance beverage containing fourtehths of one per cent, of alcohol does not intoxicate—that it is impossible for the human stomach to contain enough to produce intoxication.
One pint of this beverage containing four-tenths of one per cent, of alcohol would contain about 30 minims, or 32 drops of alcohol. It would take two gallons of this beverage to contain one ounce of alcohol, which would be equal to one drink of whisky of the size generally taken in saloons.
After carefully reviewing all the evidence and the weight thereof, the court is of the opinion that the state has failed to prove the defendant, John Nunlist, guilty beyond a reasonable doubt as charged in the information. The defendant is, therefore discharged.